# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**SETH MURDOCK,**

Petitioner,

v.  Civil Action No. 3:06cv105
(BAILEY)

**DOMINIC A. GUTIERREZ,**

Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Standing Order entered on March 24, 2000, this action was referred to Magistrate Judge Seibert for submission of proposed report and a recommendation ["R & R"]. Magistrate Judge Seibert filed his R & R on May 2, 2007 [Doc. 22]. In that filing, the magistrate judge recommended that this Court grant the petitioner's request for relief [Doc. 22].

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of de novo review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1);

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due by May 16, 2007, within ten (10) days after being served with a copy of the R & R pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The Government, by counsel, timely filed its Objections [Doc. 23] on May 14, 2007. Accordingly, this Court will conduct a de novo review only as to the portions of the report and recommendation to which the parties objected. The remaining portions of the report and recommendation to which no objections have been filed will be reviewed for clear error.

## II.   Factual and Historical Background

Petitioner initiated this case on October 5, 2006, by filing an Application for Habeas Corpus [Doc. 1] pursuant to 28 U.S.C. § 2241, in which he seeks an order directing the Bureau of Prisons ("BOP") to transfer him to a Community Corrections Center ("CCC")[1] for the last six months of his term of imprisonment. On October 16, 2006, the petitioner paid the required $5.00 filing fee [Doc. 6]. On November 7, 2006, Magistrate Judge James E. Seibert made a preliminary review of the file and determined that summary dismissal was not warranted at that time [Doc. 7]. Consequently, the respondent was directed to file an answer to the petition and did so on December 7, 2006 [Doc. 9]. The petitioner filed a reply brief on December 26, 2006 [Doc. 10].

On February 20, 2007, the petitioner filed an Emergency Motion for Summary Judgment [Doc. 12], which he later amended on February 28, 2007 [Doc. 13]. The respondent did not file a response to the petitioner's Motion. On March 6, 2007, Magistrate

---

[1] Since the filing of this action, the BOP now refers to such centers as Residential Release Centers ("RRC"). For purposes of this Order, however, the Court will refer to these facilities as CCC's.

Judge Seibert reviewed the petitioners' Motion and determined that additional information was needed [Doc. 14]. Accordingly, the respondent was directed to file the necessary information and did so on March 16, 2007 [Doc. 16]. On March 15, 2007, petitioner filed a Notice [Doc. 15] regarding a recent decision by the Tenth Circuit Court of Appeals pertinent to the issue raised in this action.

This matter is now before the Court for consideration of Magistrate Judge Seibert's report and recommendation.

### I. Facts

On June 12, 2003, the petitioner was sentenced in the United States District Court for the Eastern District of Michigan to a twenty-seven (27) month term of confinement for Possession of False Papers to Defraud the United States in violation of 18 U.S.C. §§ 2 and 1002. Petitioner was also sentenced to three years supervised release. On July 7, 2006, the petitioner's supervised release was revoked because he left the jurisdiction of the Court without permission. As a result, the petitioner was designated to the Federal Correctional Institution in Morgantown (FCI Morgantown), West Virginia. Assuming good time credit, the petitioners' projected release date is September 5, 2007.

On February 12, 2007, the BOP reviewed the petitioner's eligibility for CCC placement. Upon review, the BOP determined that the petitioner met the qualifications for CCC placement and recommended that petitioner be transferred to a CCC for the last 10% of the time served on his sentence, or on July 21, 2007; in other words, the last 46 days of his sentence served.

## II. Contentions of the Parties

Petitioner raises the following ground in his Application for Habeas Corpus:

(1) The Bureau of Prisons' policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled unconstitutional.

The Government contends that the petition should be dismissed because:

(1) Petitioner has failed to exhaust his administrative remedies;

(2) The facts of the complaint are not yet ripe for review;

(3) The February 2005 Rules are valid and entitled to substantial deference; and

(4) The Bureau properly exercised its discretion in a categorical manner by limiting placement in CCC's to the last ten percent of an inmate's sentence served, not to exceed six months.

## III. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However, on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion, limited an inmate's placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be

served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts,[2] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b), which states:

The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

---

[2] See **Goldings v. Winn**, 383 F.3d 17 (1st Cir. 2004); **Elwood v. Jeter**, 386 F.3d 842 (8th Cir. 2004); **Cato v. Menifee**, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003) (collecting cases).

(4) any statement by the court that imposed the sentence -

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994 (a) (2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20- 21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence being served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as

provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV. Analysis

### A. Exhaustion

The petitioner admits that he has not exhausted his administrative remedies alleging that raising his claim through the internal grievance system would be moot because the issues raised in the petition can only be resolved in the United States District Court. Federal inmates generally are required to exhaust their administrative remedies prior to filing a § 2241 petition. *See, e.g.*, ***Martinez v. Roberts***, 804 F.2d 570 (9th Cir. 1996); ***Moscato v. Federal Bureau of Prisons***, 98 F.3d 757 (3d Cir. 1996); ***Colton v. Ashcroft***, 299 F.Supp. 2d 681 (E.D. Ky (2004). However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. *See, e.g.*, ***Fagiolo v. Smith***, 326 F. Supp.2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c); ***Zucker v. Meinfee***, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile).

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. For this reason, it follows that a Court has the discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). Here, it is not disputed that the petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, exhaustion would be futile in this instance "because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)." *Fagiolo v. Smith*, 326 F.Supp.2d at 590. Accordingly, this Court **finds** that exhaustion is waived and that the case proceed to a determination on the merits.

## B. Whether Petition Raises Issues Which Are Ripe for Adjudication

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *Metzenbaum v. Fed. Energy Regulatory Comm'n*, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

***Abbott Laboratories v. Gardner***, 387 U.S. 136, 148-49 (1967) (overruled on other grounds). Since the initiation of this case, the BOP has made a formal recommendation as to the petitioner's CCC placement. Accordingly, this case is now ripe for adjudication.

## C. The Constitutionality and Validity of the 2005 Rules

### 1. Petitioner's contentions

In his petition, the petitioner asserts that he was told by his counselor, that as a matter of policy, he could not be transferred to a CCC until the last 10% of his sentence, or until approximately the last 45 days of his sentence. The petitioner asserts that such policy has been ruled unconstitutional by the Second, Third and Eighth Circuits and he is being unlawfully denied transfer to a CCC for the last six months of his sentence. As relief, the petitioner request the Court grant his writ and order the BOP to transfer him to a CCC for the last six months of his sentence.

In support of his claims, the petitioner asserts that the BOP's 10% policy represents a categorical rule which places durational limits on CCC confinement. The petitioner

asserts such rule contradicts the plain meaning of 18 U.S.C. § 3621(b) and has been found unlawful by the Second, Third and Eighth Circuits because it contravenes unambiguously expressed congressional intent and the ex post facto clause of the United States Constitution. In addition, although the petitioner concedes that the BOP has discretion under § 3621(b) to make placement determinations, the petitioner asserts that § 3621(b) sets specific parameters which limit that discretion. Therefore, the petitioner asserts that the BOP may not implement categorical rules which do not take into account the limits of its discretion.

## 2. Respondent's contentions

In its response to the Court's show cause order, the respondent argues that the February 2005 rules are valid because the BOP has properly exercised its discretion in a categorical manner through its rule-making power. In support of this claim, the respondent argues that 18 U.S.C. § 3624 (c) governs his claim and not 18 U.S.C. § 3621(b) as the petitioner suggests. In addition, the respondent argues that the BOP's interpretation of the statute is entitled to substantial deference under the standard set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Second, the respondent argues that § 3621(b) does not require the Bureau to consider transferring inmates to any facility. Moreover, the respondent argues that the BOP has broad discretion in designating the place of a prisoner's imprisonment. Given the Bureau's sweeping authority," the respondent asserts that "its method for making placement determinations is entitled to substantial deference, and inmates such as Petitioner do not have the statutory right under § 3621(b) to require the Bureau to consider

transferring them to a CCC or any other facility at any particular time." Response to Show Cause Order [Doc. 9] (hereinafter Response) at 16.

To this end, the Court does not believe that the petitioner is arguing that § 3621(b) requires that the BOP consider him for placement in a CCC. Instead, the Court understands the petitioner's argument to be that the BOP may consider him for placement in a CCC under § 3624(c), but in doing so, must consider the five factors enumerated in § 3621(b). Accordingly, the Court finds this argument to be moot and has not considered it in more detail throughout this Order.

Third, the respondent argues that the Supreme Court has upheld the BOP's ability to categorically exercise the discretion Congress has statutorily granted it. *See* Response at 17 (citing **Lopez v. Davis**, 532 U.S. 230, 233-34 (2001)). The respondent further argues that the issue presented in this case is strikingly similar to that before the Supreme Court in **Lopez**. Therefore, the respondent asserts that "[t]he Bureau's decision to restrict CCC placements to prisoners serving the final ten percent of their sentences is a lawful categorical exercise of the agency's discretion, just as the categorical exclusion of certain crimes from early release eligibility was lawful in Lopez." *Id.* at 18.

Fourth, the respondent asserts that § 3621(b)'s statutory language and legislative history show that the statute's listing of certain factors does not curb the Bureau's discretion. In support of this contention, the respondent asserts that the provisions of § 3621(b) make it plain that the Bureau has the discretion, but not the duty to consider the enumerated factors in making decisions. The respondent relies on Congress's use of the word "may," as opposed to "shall" in the statute. In addition, the respondent asserts that

the legislative history shows that the enumerated factors were not intended to limit or restrict that BOP's exercise of its discretion under § 3621(b). Therefore, the respondent argues that the factors enumerated in § 3621 were intended to be nonexclusive and that they do not limit the Bureau's discretion.

Fifth, the respondent contends that the Bureau did in fact consider the five enumerated factors in § 3621(b) when issuing the February 2005 rules. In support of this claim, the respondent asserts that "[i]n proposing the 2005 Rules, the Bureau considered the resources of the facility contemplated, . . . when it reasoned that CCC's are 'particularly well suited as placement options for the final portion of the offenders' prison terms.'" Response at 22 (quoting 70 Fed. Reg. at 1660). In addition, the Bureau reasoned that "'[b]y ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available to serve the purposes for which their resources make them best suited." *Id.* at 23. Moreover the respondent asserts that the rule expressly incorporates the length of the prisoner's sentence into an inmate's CCC placement for purposes of determining the length of time necessary to transition back into the community. *Id.* Also considered were policy statements pertinent to statements issued by the Sentencing Committee and the statutory mandate that no favoritism be given prisoners of high social or economic status. *Id.* The respondent asserts that the February 2005 Rules make it clear that the Bureau continues to consider the exhaustive list of factors in § 3621(b) when making its placement decisions. *Id.* at 24.

Finally, the respondent asserts that the February 2005 Rules do not violate the *ex*

*post facto* clause because they are not impermissibly retroactive, nor do they increase the punishment for petitioner's crime. The Court agrees that the February 2005 Rules were implemented after petitioner's supervised release was revoked and were therefore, not applied to him retroactively. Nor do the February 2005 Rules increase the punishment for the petitioner's crime. Thus, the petitioner cannot state an *ex post facto* claim and such claim will not be discussed further.

### 3. Pertinent Case Law

The Third Circuit Court of Appeals was the first Court of Appeals to address the issue raised in the instant case. In **Woodall v. Federal Bureau of Prisons**, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See **Woodall** at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. *Id*. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." *Id*. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621,

these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Id.* at 244.

In reaching this conclusion, the Third Circuit rejected the same arguments made by the respondent in this case. Moreover, the three other Courts of Appeals who have addressed this issue have made similar findings. See ***Wedelstedt v. Wiley***, 477 F.3d 1160 (10th Cir. 2007); ***Levine v. Apker***, 455 F.3d 71, 85-87 (2d Cir. 2006); ***Fults v. Sanders***, 442 F.3d 1088, 1092 (8th Cir. 2006). Therefore, although none of the Circuit opinions have been unanimous, and in fact, there were strong dissents in each case,[3] the clear weight of authority at this time suggests that the regulations are invalid. Upon a review of those cases, including the dissenting opinions, this Court is persuaded that the regulations are invalid for the reasons set forth in ***Woodall***, ***Fults***, ***Levine*** and ***Wedelstedt***.

### 4. Discussion

---

[3] See ***Wedelstedt***, 477 F.3d at 1169-71 (Hartz, Circuit Judge, dissenting)(agreeing that § 3621 requires the BOP to consider each of the five enumerated factors, but finding that the BOP properly performed such duty when it reasonably considered each of the five factors in promulgating its general rule) ; ***Levine***, 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting) (construing the rule as "a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally" with limited statutorily identified exceptions including "those catalogued in § 3621(b)," finding the rule comports with § 3624(c)'s express time limitations, and finding ***Lopez*** supports the Bureau's "categorical rejection of CCCs for general § 3621(b) designations (i.e., placements not involving § 3624(c) or other statutory concerns)"; ***Fults***, 442 F.3d at 1093 (Riley, Circuit Judge, dissenting ) (finding that the "BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(b), do not conflict with the factors enumerated in section 3621(b)"); ***Woodall***, 432 F.3d at 251-52 (Fuentes, Circuit Judge, dissenting) (agreeing that § 3621(b) requires the BOP to consider each of the five enumerated factors listed in the statute, but finding that the BOP is not required to consider the factors until the inmate is actually considered for transfer and that such consideration is not required "until the lesser of six months or ten percent of the inmate's sentence remains").

The language of § 3621 is clear. Each of the five enumerated factors must be considered by the BOP in making placement and transfer determinations. The 2005 regulations simply do not allow the BOP to consider the three individualized factors. Those factors include the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate. See 18 U.S.C. § 3621(b)(2)-(4). Accordingly, the Court need not go past the first step of the *Chevron* analysis. Even if it could, the BOP's interpretation is contrary to the statute and is not due deference.

Moreover, this Court agrees that *Lopez v. Davis*, supra, fails to support the BOP's categorical decision-making at question in this case. In *Lopez*, the Supreme Court upheld the validity of a BOP rule excluding certain inmates from early release under 18 U.S.C. § 3621(e)(2)(B). *Lopez*, 531 U.S. at 243-44. Under that statute, the BOP has been given the discretion to reduce the prison term of an inmate convicted of a "non-violent" offense if the inmate successfully completes a substance abuse program. *Id.* at 232. Because the statute does not define what constitutes a "nonviolent" offense, the BOP implemented a regulation categorically denying early release to prisoners convicted of a felony involving "the carrying, possession, or use of a firearm." *Id.* The *Lopez* Court upheld the categorical decision making of the BOP because the statute does not define the term "nonviolent offense," and at the same time, gives the BOP the discretion to determine which inmates are offered pre-release. *Id.* 235-238. Therefore, the Court reasoned that it was

permissible for the BOP to use its discretion to define the term "nonviolent offense" and to categorically exclude certain inmates for early release consideration based on that definition. *Id.* The Court's decision though, was clearly grounded in the discretion afforded the BOP under the statute and the ambiguity in defining what constitutes a nonviolent offense. None of those factors are at play in the instant case.

Although the BOP does have some discretion under § 3621(b) in determining the actual place of an inmate's confinement, the BOP is required to consider each of the five factors before making placement and transfer determinations. There is no ambiguity that the BOP can or must define. In addition, *Lopez* is further distinguishable because § 3621(e)(2)(B) does not require the BOP to make individualized determinations as does § 3621(b). However, individualized determinations are not necessarily dispositive of the issue. In *Lopez*, the Court stated that "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez*, 531 U.S. 243-44 (internal quotations omitted). Nonetheless, sentencing recommendations and the history and characteristics of the prisoner are not generally applicable. Moreover, Congress does "appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." *Woodall*, 432 F.3d at 247.

Although this Court agrees with the four Courts of Appeals and believes the petitioner's writ of habeas corpus should be granted, the petitioner is advised that such decision does not entitle him to an Order from this Court directing that he be immediately

transferred to a CCC. The Court has determined that the BOP's regulations are invalid only to the extent that his placement in a CCC is limited to the lesser of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Thus, in granting the instant writ, petitioner is merely entitled to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

## V. Petitioner's Emergency Motion for Summary Judgment

In his Emergency Motion for Summary Judgment [Doc. 12], the petitioner asserts that it is undisputed that the exhaustion requirement is futile and moot. In addition, the petitioner asserts that since the BOP has made a formal decision as to his CCC placement, this action is ripe for adjudication. Finally, the petitioner argues that because the vast majority of Courts have concluded that the plain language of § 3621(b) is clear, the BOP's categorical exercise of discretion as it relates to the issue raised in the instant case, is invalid and contravenes congressional intent. Thus, the petitioner asserts that because his claims raise an issue of substantial merit, to which there is no substantive defense of opposition, he is entitled to relief as a matter of law.

## VI. Conclusion

Based on the foregoing, it is the opinion of this Court that the petitioner's §2241 petition [Doc. 1] should be, and is hereby **GRANTED**, and the BOP is directed to consider this petitioner, Seth Murdock, for CCC placement. Moreover, inasmuch as the Court finds that the petitioner is entitled to relief in this case, petitioner's Emergency Motion for Summary Judgment [Doc. 12] and Emergency Motion for Injunction [Doc. 26] are also **GRANTED**.

The Clerk is directed to mail copies of this Order Adopting the Report and Recommendation to the *pro se* petitioner, the Bureau of Prisons, and to all counsel of record.

**DATED:** July 24, 2007.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE